United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 21-20614-Civ-Scola |
| Approximately $3,275.20 seized from Bank of America Account Number 22905257244, and others, Defendants. | ) ) ) ) ) |

**<u>Omnibus Order Denying Motions to Dismiss</u>**

    In this case the Government seeks forfeiture in rem of various assets—fourteen accounts, totaling about $45 million, and seven real properties—that it says constitute the proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, and/or property traceable to such proceeds or property (collectively, the "Defendant Assets"). (Compl., ECF No. 1.) The Government lodges seven claims, seeking forfeiture of the Defendant Assets: under 18 U.S.C. § 981(a)(1)(C) as proceeds of foreign bribery offenses (claim one); and under 18 U.S.C. § 981(a)(1)(A) as property involved in a money laundering conspiracy (claim two), concealment of laundering transactions (claim three), international concealment of laundering transactions (claim four), promotional laundering transactions (claim five), international promotional laundering transactions (claim six), and laundering transactions greater than $10,000 (claim seven). In response, a number of putative claimants seek dismissal of the complaint, with prejudice, arguing, variously, (1) the Government's case is barred by the doctrine of international comity; (2) the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6); and (3) the forfeiture claims are time barred. (Clmts.' Mots., ECF Nos. 46, 59, 63.)[1] The Government opposes the motion. (Pl.'s Resp., ECF No. 83.) And some of the moving Claimants have timely replied. (Clmts.' Replies,

---

[1] The Claimants filing the main motion (ECF No. 46) are Daniel Santilli Garcia, Carmela Tomasicchio, Leonardo Santilli Tomasicchio, Sabrina Santilli Tomasicchio, SGO Group LLC, Brickell Miami 5210 LLC, SGO Group Ltd., Ribet International Ltd., PLD Inversiones CA, and Constructora COSACO CA (collectively, the "Santilli Claimants"). The arguments set forth in Claimants Guillermo A. Montero, Manning 90064 LLC, 2377 Glendon LLC, 10421 Northvale LLC, and Peck/Jones Construction, Inc.'s (collectively, the "Montero Claimants") motion (ECF No. 59) are nearly identical to those in the Santilli Claimants' motion. Lastly, Claimant Janeth Bayona sets forth several generalized arguments and adopts the Santilli Claimants' motion (Bayona, along with the Montero Claimants and the Santilli Claimants, collectively the "Claimants"). (ECF No. 63.)

ECF Nos. 96, 98.)[2] After careful review, the Court **denies** the Claimants' motions. (**ECF No. 46, 59, 63**.)

### 1. Background[3]

Petroleos de Venezuela, S.A. ("PDVSA") is the state-owned and -controlled oil company of Venezuela. (Compl. ¶ 6.) PDVSA, along with its subsidiaries and affiliates, is responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provides funding for other operations of the Venezuelan government. (*Id.*) PDVSA also maintains a majority stake in many joint ventures with foreign oil companies, controlling their operations, including the procurement process. (*Id.* ¶ 7.) Four of these joint ventures, operating in the oil-rich Orinoco belt of Venezuela are Petrocedeno S.A.("Petrocedeno"); Petropiar S.A. ("Petropiar"); Petromonagas S.A. ("Petromonagas"); and Petrolera Sinovensa S.A. ("Sinovensa"). (*Id.*) PDVSA further has a procurement subsidiary responsible for the purchase of materials and equipment for PDVSA and its subsidiaries: Bariven, S.A. ("Bariven," collectively with the four joint ventures, "PDVSA Subsidiaries"). (*Id.*)

Leonardo Santilli Garcia, who died in September 2020, and Daniel Santilli Garcia owned or controlled four Venezuelan companies that obtained contracts and received payments for the provision of goods and services to the PDVSA Subsidiaries: Constructora Cosaco C.A. ("Cosaco"); PLD Inversiones, C.A. ("PLD"); SGO Group Inc. ("SGO"); and A&M Support Group, Inc. ("A&M," collectively with the other companies, the "Santilli Companies"). (*Id.* ¶ 11.) The Santillis, beginning in at least 2014, transferred funds to five Venezuelan officials using Mercantil Bank accounts they maintained, and on which they had signatory rights, in the Southern District of Florida, through three of those companies: Cosaco, PLD, and SGO. (*Id.* ¶¶ 23, 26–27, 30–31, 33, 35, 37–38.) The Government says that, "[b]ut for the agreement to pay bribes, the Santilli Companies would not have obtained the contracts, or would not have been paid on contracts they obtained in a timely fashion." (*Id.* ¶ 23.)

The Government details a subset of these transfers to the Venezuelan officials in its complaint. For example, in January 2015, $201,830 was sent from

---

[2] Bayona and the Santilli Claimants filed replies (ECF No. 96, 98, respectively). The Montero Claimants do not appear to have replied. Another Claimant, J&D Investments of Miami, LLC, filed what is captioned a reply (ECF No. 97), however, it does not appear this Claimant ever filed a corresponding motion to dismiss.

[3] This background is based on the allegations the Government presents in its complaint. For the purposes of evaluating the Defendants' motions to dismiss, the Court accepts the Government's factual allegations as true and construes them in the light most favorable to the Government per Federal Rule of Civil Procedure 12(b)(6).

SGO's Mercantil account to an account in Dominica that was maintained by a third party for the benefit of "Venezuelan Official 3." (*Id.* ¶ 33.) By way of another example, several months later, in August 2015, about $168,000 was sent from PLD's Mercantil account to an account in Panama for the benefit of "Venezuelan Official 5." (*Id.* ¶ 37.) Also that year, in November 2015, another $52,000 was sent, this time from the SGO account, again to an account in Panama, also for the benefit of Venezuelan Official 5. (*Id.* ¶ 38.) Other examples include transfers totaling about $226,000, in November and December 2015, that were sent from Cosaco's Mercantil account to yet another account in Panama which was maintained by a third party for the benefit of "Venezuelan Official 4." (*Id.* ¶ 35.) Continuing, the following year, in May 2016, about $345,000 was sent from the same Cosaco account to an account in Curacao. (*Id.* ¶ 27.) These funds were then used to purchase a residence for the benefit of "Venezuelan Official 1." (*Id.*) Several months later, in December 2016, two wires were sent, again from the Cosaco account—one for about $100,000 and the other for about $400,000—to two different Citibank accounts, in the Southern District of Florida, both for the benefit of a relative of "Venezuelan Official 2." (*Id.* ¶¶ 30–31.)

  These five officials, holding assorted positions within PDVSA, Petromonagas, Petrocedeno, and Petropiar, assisted the Santilli Companies in securing contracts awarded by the PDVSA Subsidiaries. (*Id.* ¶¶ 26, 28–29, 32, 34, 36.) Between July 2014 and August 2017, the Santilli Companies received into their accounts a total of about $146 million. (*Id.* ¶ 39.) Roughly $94 million was paid into Cosaco's Mercantil account; some $21 million into PLD's Mercantil account; around $19 million into SGO's Mercantil account; and about $13 million into A&M's account at Bank of America. (*Id.* ¶¶ 40–43.) These funds were frequently intermingled among company accounts as well as among the Santillis' personal accounts. (*Id.* ¶ 44.) Funds from the four Santilli Company's accounts were transferred directly to several of the Defendant accounts: the accounts the Government identifies as SGO account 7244; SGO account 8883; J&D account 6119; Cosaco account 1218; Santilli account 4453; SGO account 4456; Ribet account 8941; and Ruscino account 2112. (*Id.* ¶ 48.) The other Defendant accounts then received transfers from these direct transferee accounts: the accounts the Government identifies as Cosaco account 2019; Santilli account 0186; Santilli account 0188; PLD account 7025; Ribet account 4608; and Ruscino account 6406.

  Funds from the four Santilli Company's accounts, the Defendant accounts, and an additional account—maintained by Leros Group Corp. and controlled by Leonardo Santilli (the "Leros Account")—were used to purchase the seven Defendant real properties. (*Id.* ¶¶ 50–65.) The Leros Account, in turn, received transfers from the Santilli Company and Defendant accounts. (*Id.* ¶¶15,

54.) That account also received amounts that were then used to send payments for the benefit of Venezuelan Official 2. (*Id.* ¶¶ 54, 56, 58, 61.)

In July and August 2018, law enforcement executed federal seizure warrants for funds in all the Defendant Accounts, save one, which was restrained. (*Id.* ¶ 49.)

### 2. Legal Standard

A court considering a motion to dismiss filed under Rule 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if it fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

#### A. The Court is not persuaded that international comity bars this proceeding.

The Claimants urge the Court to apply the rules of international comity and either stay or dismiss this case. They maintain that the rules of international comity must be applied retrospectively based on "an ongoing investigation by the Venezuelan authorities (Attorney General and the Judiciary) by which several senior PDVSA[] officials and some contractors have been prosecuted . . . and other individuals are fugitive." (Santilli Clmts.' Mot. at 6.) The Claimants also insist the international comity rules must be applied prospectively, aside from the ongoing investigations, out of "respect of the Venezuelan sovereignty." (*Id.*) In support of that argument, the Claimants (1) characterize Venezuela's interest in this case as "predominat[ing] over this action," as compared to the United States' interest, and (2) describe Venezuela as "a significantly more convenient forum than the United States." (*Id.* at 9.) The Government, in opposition, maintains this case does not implicate international comity concerns at all; and even if it did, deference should be afforded to the Executive Branch's determination regarding international comity; and, finally,

even if international comity principles were considered, the Court should, on the merits, abstain from applying it in this case. (Pl.'s Resp. at 11–19.) The Court agrees with the Government that the international comity doctrine does not implicate abstention here, where the United States government seeks forfeiture of accounts held in United States financial institutions and real property sited within its borders.

"International comity 'is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" *United States v. All Assets Held in Account No. XXXXXXX*, 83 F. Supp. 3d 360, 371 (D.D.C. 2015) (quoting *Hilton v. Guyot,* 159 U.S. 113, 164 (1895). Notwithstanding this recognition, though, "dismissing a case because of international comity concerns is inappropriate when doing so would be contrary to the policies or prejudicial to the interests of the United States." *Id.* (cleaned up). Indeed, "a case in which the United States is the plaintiff would seem a particularly unsuitable candidate for abstention on international comity grounds." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d 205, 210 (D.D.C. 2011).

Here, the Executive Branch, through the Department of Justice, has brought a forfeiture action against fourteen accounts and seven real properties which it says "represent a portion of the proceeds generated from a multi-million-dollar scheme to defraud [PDVSA] and which were then laundered through United States financial institutions." (Pl.'s Resp. at 2.) And, as the Government alleges in its complaint, the Defendant Assets are traceable to the proceeds of this wide-scale fraud, were involved in or traceable to property involved in money laundering, and subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(A). It appears to the Court that, in this particular case, "the executive has already done the balancing in deciding to bring the case in the first place" and, therefore, "the doctrine of international comity does not bar this lawsuit." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 10–11 (D.D.C. 2013); *see also United States v. Baker Hughes Inc.*, 731 F. Supp. 3, 6 (D.D.C. 1990), *aff'd*, 908 F.2d 981 (D.C. Cir. 1990) ("It is not the Court's role to second-guess the executive branch's judgment as to the proper role of comity concerns under these circumstances.").

Further, a litigant "invoking the doctrine of comity must either point to a valid legal proceeding to which the court must defer; or at the very least, the defendant must demonstrate that some alternate forum would be adequate." *One Gulfstream*, 941 F. Supp. 2d at 9. Here, the Claimants have done neither. Instead, they point only to an unspecified "ongoing investigation by Venezuelan authorities" and inform, generally, that "several senior PDVSA[] officials and some contractors have been prosecuted." (Santilli Clmts.' Mot. at 6; Santilli

Clmts.' Reply at 5.) But, the mere possibility that Venezuela may have the ability to address criminal conduct within its borders, that relates to the issues raised in this case, does not negate or affect the United States' ability to seek redress for violations of United States law within its own borders. *See Baker v. Carr*, 369 U.S. 186, 211 (1962) (recognizing it would be "error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance"). Moreover, the Claimants' insistence that all the criminal activity implicated in the complaint occurred solely in Venezuela is belied by the complaint's allegations directly setting forth unlawful transfers from, between, and among the Defendant accounts in the United States. And, regardless, "the principle of comity does not operate as a pre-emption doctrine, barring [a United States] court from hearing a valid forfeiture action merely because there are foreign laws that might also apply." *United States v. Portrait of Wally, A Painting by Egon Schiele*, 99 CIV. 9940 (MBM), 2002 WL 553532, at *10 (S.D.N.Y. Apr. 12, 2002).

Ultimately, the Court finds the Claimants' arguments for abstention under the international comity doctrine fall wide of the mark and denies their motion to dismiss in that respect.

### B. The Claimants have not shown that the complaint fails to state a claim under Rule 12(b)(6).

Next, in arguing that the Government has failed to state a claim, the Claimants submit (1) the complaint fails to allege that the Defendant Assets have any connection to the alleged money-laundering or bribery transaction offenses; (2) the individual claims are all presented as conclusory allegations; and (3) the complaint fails to set forth facts showing traceability. (Santilli Clmts.' Mot. at 12–18.) In opposition, the Government recounts its allegations and contends they present sufficiently detailed facts to survive dismissal. After careful review, the Court finds the Claimants' position unpersuasive.

 As an initial matter, in considering a motion to dismiss in a forfeiture action, the traditional pleading rules are modified by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which, along with the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202 (codified primarily at 18 U.S.C. § 983), sets out requirements specific to civil "forfeiture action[s] in rem arising from a federal statute." Fed. R. Civ. Pro. Supp. R. G(1). "Accordingly, the Government's Complaint must 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.'" *United States v. Currency, 300,000 Seized from Bryant Bank Account No. XXX-XX-XXXX*, 2:12-CV-2431-AKK, 2013 WL 1498972, at *1 (N.D. Ala. Apr. 9, 2013) (quoting Fed. R. Civ. Pro. Supp. R. G(2)(f)).

As to their first point, the Claimants characterize the complaint's allegations as leading to the inexorable conclusion that certain accounts and properties—specifically, the $6,415,388.33 seized from SGO account 4456; the $4,750 seized from Ribet account 8941; $3,810,331.36 seized from Ribet account 4608; and the real properties located at 1270 99th Street, Bay Harbor Island, FL; 2377 Glendon Avenue, Los Angeles, CA; 10421 Northvale Road, Los Angeles, CA; and 401 69 Street, #704, Miami Beach, FL—"are not part of the transactions of the alleged bribery/money laundering scheme . . . since those assets do not belong to the Santilli Companies . . . and there is no single mention [of] those defendants in rem in any of the factual allegations." (Santilli Claimants' Mot. at 12; Montero Claimants' Mot. at 9–10; Bayona's Mot. at 3.) In making this argument, the Claimants appear to (1) misunderstand the Government's burden in this forfeiture action and (2) overlook the Government's allegations as to these in rem Defendant accounts and properties.

To begin with, the Government need not show that the Defendant Assets "belong to the Santilli Companies" in order to succeed on its claims. Instead, the Government can prevail by establishing that the Defendant Assets are simply traceable to the criminal scheme described in the complaint. *See United States v. $448,342.85*, 969 F.2d 474, 477 (7th Cir. 1992) ("Only property used in or traceable to the 'specified unlawful activity' is forfeit. Money need not be derived from crime to be 'involved' in it."). Secondly, the Claimants' position that the complaint is devoid of any mention of the Defendant accounts at all (Santilli Claimants' Mot. at 12) is directly belied by the allegations themselves. To be sure, the Government's allegations specifically identify the listed accounts, explaining that the Santillis transferred funds to them from their companies' Mercantil accounts, denoting the exact dates and amounts of the transfers. (Compl. ¶¶ 47–48.) Finally, the Court disagrees with the Claimants' stance that the Government has not adequately identified any "specified unlawful activity." (Santilli Clmts.' Mot. at 14.) Instead, the Court finds the Government sets forth facts establishing: the Santilli Companies' payment of several bribes to various Venezuelan officials (Compl. ¶¶ 23, 26–27, 30–31, 33, 35, 37–38); the securing of contracts awarded to the Santilli Companies as a result of these bribes (*id.* ¶¶ 26, 28–29, 32, 34, 36); the payment of about $146 million into various Santilli Company accounts springing from these contracts (*id.* ¶ 39); and, finally, the purchase of several real properties, including the properties identified in the Montero Claimants and Bayona's motions, with a portion of these funds (*id.* ¶¶ 50–65). Reading these factual allegations in the light most favorable to the Government, the Court finds that the Government has succeeded in identifying foreign bribery offenses, property involved in money laundering or conspiracy to commit money laundering, or property traceable to such property. The Court

also finds these allegations state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Next, the Court similarly finds the Claimants' criticisms regarding the conclusory nature of the Government's seven individual claims meritless. The Claimants insist these claims are impermissibly vague because they consist of nothing more than a formulaic recitation of the elements of each charge. (Santilli Clmts.' Mot. at 15.) Each claim, however, incorporates the complaint's prior factual allegations which set forth the purported criminal schemes, explicitly tracing the funds derived and involved in those schemes directly to the Defendant Assets. The Court, therefore, finds no merit to the Claimants' objections that this leaves them "to guess the factual and legal basis for the Government's claims." (*Id.* at 16.)

Finally, the Claimants submit the Government's complaint fails to specify what portion of the $146 million received by the Santilli Companies is tied to the alleged bribery scheme. (Santilli Clmts.' Mot. at 16.) As the Claimants frame it, the sole contract the Government describes in any detail was a procurement contract under which Petropiar paid one of the Santilli Companies $9.3 million for machinery for which the Santilli company paid only $2.5 million. (*Id.* (citing Compl. ¶ 21).) Again, though, the Claimants disregard the allegations that implicate the entire $146 million, as set forth above: the funds received from PDVSA by the Santilli Companies; and the transfer of these funds among accounts owned and controlled by the Santillis, as well as accounts owned by individuals with no apparent connection or relation to the business of the Santilli Companies. This is enough, at this stage of the litigation, for the Government to ward off dismissal. Ultimately, "[m]oney need not be derived from crime to be 'involved' in it." *$448,342.85*, 969 F.2d at 477. Indeed, "funds laundered need not be traceable to a specific illegal transaction; it is enough if the government shows that the transaction involved some funds which were derived from some illegal activity." *United States v. Smith*, 223 F.3d 554, 576 (7th Cir. 2000).

In sum, the Court is not persuaded by the Claimants' arguments that the Government has failed to state a claim for relief or that the Government has failed to set forth sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial.

### C. The Claimants' argument that the Government's claims are time barred misses the mark.

Lastly, the Claimants maintain that the Government's case is time barred under 18 U.S.C. § 984. Under that section, forfeiture may be sought for fungible

property that is "found in the same place or account as the property involved in the offense that is the basis for the forfeiture." 18 U.S.C. § 984(a)(2). This ability, though, to seek forfeiture of fungible property that is not itself "traceable directly to the offense that is the basis for the forfeiture," is narrowly restricted in time: such a forfeiture must be commenced within one year from the date of the relevant offense. 18 U.S.C. § 984(b). According to the Claimants, because the complaint's allegations are limited to purported offenses that occurred between 2014 and 2017 and because none of the Defendant Assets are "traceable directly to the offense that is the basis for the forfeiture," the action is time barred. The Court disagrees.

To begin with, as set forth in the above section, the Court is not persuaded by the Claimants' lack-of-traceability arguments. Further to that point, the Government's case is explicitly premised on forfeiture under §§ 981(a)(1)(C) and 981(a)(1)(A) (Compl. ¶¶ 76–96), *not* on § 984(b). And, as set forth in the complaint's introduction, the Government's action pointedly seeks "to forfeit assets that constitute proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, and/or property traceable to such property." (Compl. ¶ 1.) Accordingly, the Claimants have not established that § 984(b)'s one-year limitation has any application to this case.[4]

### 4. Conclusion

As set forth above, the Court **denies** the Claimants' motions to dismiss (**ECF Nos. 46, 59, 63**).

**Done and ordered** at Miami, Florida, on November 15, 2021.

_____
Robert N. Scola, Jr.
United States District Judge

---

[4] In her reply, Bayona identifies, in passing, an alternative argument as to untimeliness, under 19 U.S.C. § 1621. Because raising an issue for the first time in reply deprives the non-movant of a fair opportunity to respond, the Court will not consider Bayona's belated § 1621 argument. *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (cleaned up).