United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 21-20614-Civ-Scola |
| Approximately $3,275.20 seized ) | |
| from Bank of America Account ) | |
| Number 22905257244, and others, ) | |
| Defendants. ) | |

## Omnibus Order

In this case, the Government seeks forfeiture in rem of various assets—fourteen accounts, totaling about $45 million, and seven real properties—that it says constitute the proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, and/or property traceable to such proceeds or property (collectively, the "Defendant Assets"). (Compl., ECF No. 1.) Various individuals and entities have filed verified claims, asserting interests in the Defendant Assets. Currently before the Court are pending motions related to claims submitted by Isabel Cristina Milagros Marcucci Jimenez (Marcucci Cl., ECF No. 15); Guillermo A. Montero (G. Montero Cl., ECF No. 44); and Peck/Jones Construction, Inc. (Peck/Jones Cl., ECF No. 45). The Government has moved to strike all three claims (Gov't's Mot. to Strike Marcucci Cl., ECF No. 81; Gov't's Mot. to Strike G. Montero and Peck/Jones's Cls., ECF No. 82.) Marcucci did not respond to the Government's motion, but the Montero and Peck/Jones motion is fully briefed. (Cls.' Resp., ECF No. 92; Gov't's Reply, ECF No. 110.) After reviewing the briefing, the record, and the relevant legal authorities, the Court **grants** the Government's motions (**ECF No. 81**, **82**).

1. **Legal Standard**

This action, as a civil action in rem in which the Government seeks forfeiture of the Defendant Assets, is governed by the Federal Rules of Civil Procedure as well as Supplemental Rule G. Under Rule G(5)(a), entities or individuals who assert an interest in a defendant asset can file a claim to join the litigation. Further, "[i]n order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987). A sufficient interest means "an "ownership or possessory interest in the property seized." *United States v. Nine*

*Hundred Sixty Thousand Dollars in U.S. Currency*, 307 F. App'x 251, 255 (11th Cir. 2006). Because an in rem action proceeds against property, rather than a claimant, each claimant must "make[] a valid claim that he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government." *$38,000.00*, 816 F.2d at 1543.

### 2. The Court strikes putative Claimant Marcucci's verified claim.

Marcucci filed her verified claim on March 19, 2021, asserting an interest in three of the Defendant accounts: (1) approximately $7.7 million seized from UBS account number FL 14453 in the names of Daniel and Leonardo Santilli Garcia; (2) approximately $10 million seized from Merrill Lynch account number 5V2-10186 in the name of Daniel Santilli Garcia; and (3) approximately $1 million in funds seized from Merrill Lynch account number 5V2-10188, also in the name of Daniel Santilli Garcia. (Marcucci Cl. at 1.) According to Marcucci, her interest in the claimed accounts arises as a result of her status as Daniel Santilli's wife. (*Id.*) She maintains that, "[u]nder the laws of Venezuela, and specifically under the community of marriage property system," she owns "50% of all assets within the marriage-community property." (*Id.* at 1–2.) The Government has filed a motion to strike Marcucci's claim but Marcucci has not responded and the time to do so has passed. Marcucci's failure to respond to the motion, alone, is a sufficient basis to grant the motion by default. L.R. 7.1(c). Regardless, the Court has reviewed the motion and agrees with the Government that Marcucci has not presented a valid claim that she has a legally cognizable interest in the claimed accounts.

First, Marcucci is mistaken about the applicability of Venezuelan law in evaluating her property interest. Instead, Florida law governs her interest in the claimed accounts. *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) ("[W]e apply state law to determine the nature of [a claimant's] interest in the [f]orfeited [p]roperty."); *see also United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 385 F.3d 1187, 1191 n.3 (9th Cir. 2004) (noting that courts properly look to state law to determine "whether a claimant has a sufficient ownership interest in the defendant property to confer Article III standing"). Next, under Florida law, all aspects of bank accounts located in Florida, regardless of the domicile or residency of the account owner, are governed by Florida law. Fla. Stat. § 655.55(1); *see also Sanchez v. Sanchez De Davila*, 547 So. 2d 943, 945 (Fla. 3d DCA 1989) (holding that "Florida law must govern" where bank accounts were located in Florida even though Venezuela was the domicile of the creator of the accounts and Venezuelan law was contrary to Florida law).

And, finally, under Florida law, Marcucci does not have an ownership interest in her spouse's bank account when she is not a signatory or an accountholder, the accountholder spouse is living, and the couple remains married. *United States v. Lima*, 8:09-CR-377-T-17TBM, 2011 WL 5525339, at *4 (M.D. Fla. Oct. 19, 2011), *rep. and rec. adopted,* 8:09-CR-377-T-17TBM, 2011 WL 5525354 (M.D. Fla. Nov. 14, 2011) (recognizing that simply because a spouse *could*, at some point, claim an interest in an account as a marital asset, that interest would only ever be realized upon the dissolution of the marriage and by court order); *see United States v. Premises Known as 717 S. Woodward St.,* 2 F.3d 529, 526 (3d Cir.1993) ("[I]n forfeiture actions, federal courts applying the laws of other states have refused to find that a right to equitable distribution of marital property confers ownership independent of a divorce proceeding."); s*ee also* Fla. Stat. § 61.075 (defining the process for distributing marital assets upon the dissolution of a marriage). Marcucci herself acknowledges she is presently married to Daniel Santilli. Further, her name does not appear on any of the accounts to which she claims a one-half interest. Those facts combined compel the conclusion that Marcucci does not have standing under Florida law to assert an ownership interest in the accounts as marital assets for the purposes of this forfeiture action.

### 3. The Court strikes putative Claimants Montero and Peck/Jones's verified claims.

Montero and Peck/Jones filed their verified claims on April 12, 2021, asserting interests in two Defendant bank accounts: (1) approximately $6.4 million in funds that were seized from UBS account number FL 14456 N in the name of SGO Group Ltd., and (2) approximately $3.8 million in funds that were seized from Pershing LLC account number 39K-954608 in the name of Ribet International Ltd.; and in three Defendant real properties: (1) 1270 99 Street, Bay Harbor Island, Florida, (2) 2377 Glendon Ave., Los Angeles, California, and (3) 10421 Northvale Road, Los Angeles, California. (G. Montero Cl., ECF No. 44; Peck/Jones Cl., ECF No. 45.) According to Montero and Peck/Jones, they maintain "an ownership interest" in the Defendant accounts. (Cls. at 1.) As to the Defendant real properties, Montero and Peck/Jones say they have "ownership interest[s] in any and all monies generated from the sale" of the properties. (*Id.* at 2.) Attendant to that interest, they also claim an interest in the "amount of $2,000,000.00," as to each of the three properties, "which represents loss of income and profit to PECK/JONES per the parties['] Agreement to develop the real property." (*Id.*) Finally, Montero and Peck/Jones maintain they have "suffered lost opportunity and investment damages in the amount of $3,000,000.00 for the arrest of the defendants." (*Id.*) As permitted by

Supplemental Rule G(6), the Government served Montero and Peck/Jones with special interrogatories—a mechanism provided for in civil forfeiture cases for assessing a claimant's identity and relationship to the claimed assets. (Gov't's Mot.¶ 5.) Montero and Peck/Jones responded, providing more details about the lost income they claim, as to the Defendant real properties, but no additional information about their purported ownership interests in the two Defendant accounts. (*Id.* ¶ 6.)

In moving to strike both Montero and Peck/Jones's claims, the Government argues, as to the real properties, that Montero and Peck/Jones have alleged facts showing that, at most, they are merely unsecured creditors. (*Id.* at 7.) As to the two bank accounts, the Government points out that, without any supporting factual allegations, Montero and Peck/Jones's non-specific claims to accounts that do not bear their names are insufficient to confer Article III standing. (*Id.*) In opposition to the motion, Montero and Peck/Jones, through counsel, argue (1) Montero and Peck/Jones's claimed assets are not subject to forfeiture because of the expiration of the relevant statute of limitation; (2) the Government lacks standing to bring the forfeiture action; (3) the Government has failed to state a claim upon which relief can be granted; (4) Montero is the sole owner of the three claimed Defendant real properties; and (5) Montero and Peck/Jones's bald assertion of ownership of the Defendant assets is, even standing alone, sufficient to confer standing. (Cls.' Resp., ECF No. 92, 1–2.) Because the first three arguments have no bearing on the Government's motion to strike, the Court will not address them. As to their last two points, the Court finds, for the following reasons, Montero and Peck/Jones miss the mark.

The bulk of that part of Montero and Peck/Jones's response that addresses the issues raised in the Government's motion focuses on Montero's claims to the three Defendant real properties. While the Claimants do not dispute that all three properties are titled to limited liability companies, they nonetheless maintain that Montero "is the sole owner of all three [properties] by virtue of his failure to elect to have the LLC's treated as corporations by the Internal Revenue Service." (Cls.' Resp. at 12–16.) The Claimants' position is meritless. They fail to supply any support whatsoever for the notion that the IRS regulations on which they rely have any application in the civil-forfeiture context. Indeed, by their terms, these regulations simply govern how certain entities will be classified for *tax purposes*. There is nothing in the regulations that suggests an application outside of the tax context.

Further, the law is well settled that LLCs are separate legal entities from their members. *See United States v. All Funds in the Account of Prop. Futures, Inc.*, 820 F. Supp. 2d 1305, 1327 (S.D. Fla. 2011) (Marra, J.), *aff'd sub nom. United States v. ADT Sec. Services, Inc.*, 522 F. App'x 480 (11th Cir. 2013)

("An LLC is a type of corporate entity, and an ownership interest in an LLC is personal property that is reasonably understood to fall within the scope of corporate stock.") (cleaned up). And members of LLCs, like shareholders, do not have standing to bring claims simply by virtue of their membership in the LLC. *Id.* ("[A] member of an LLC lacks standing to file a claim through its membership in an LLC.") (cleaned up). Montero simply cannot establish standing based on his status as a member of the LLCs that hold title to the properties.

Nor can either Claimant establish an interest in the properties based on their purported claims to "any and all monies generated from the sale" of the properties which "represents loss of income and profit . . . per the parties['] Agreement to develop the real propert[ies]." (Cls. at 2.) One owed money by another, absent a means to secure the loan (such as a lien), or one who has undertaken to aid an individual in a venture is, at most, an unsecured creditor with no interest in the specific property, and, therefore, lacks standing to challenge forfeitures of the putative debtor's property. *See United States v. Carrell*, 252 F.3d 1193, 1196 (11th Cir. 2001) (finding that a claimant could not establish standing in a forfeiture action based only on a defendant property owner's owing her child-support arrearages); *United States v. $26,620.00 in U.S. Currency*, Civ.A., 2:05CV50WCO, 2006 WL 949938, at *6 (N.D. Ga. Apr. 12, 2006) (holding that a claimant's assertion that cash seized from his son had been a loan showed only that the father was an unsecured creditor and did not establish standing). Here, neither Montero nor Peck/Jones claims an interest in the real properties themselves; rather, they claim an interest only in income or profits that may arise out of the sale of those properties. This represents a claim only to lost investment potential and shows that Montero and Peck/Jones are nothing more than unsecured creditors.

Without more, Montero and Peck/Jones's otherwise unadorned allegation that they have ownership of the claimed Defendant Assets is insufficient to establish their Article III standing in this case.[1]

### 4. Conclusion

As set forth above, the Court **grants** both of the Government's motions (**ECF Nos. 81, 82**), thus **striking** Marcucci, Montero, and Peck/Jones's verified claims (**ECF Nos. 15, 44, 45**).

---

[1] Montero and Peck/Jones, in their opposition, mention, for the first time, having "actual possession and control" of the real properties. (Cls.' Resp. at 14.) Not only do they fail to provide any supporting factual allegations to substantiate this claim, but they neglect to state any such interest in their verified claims either. Without more, the Court disregards this untimely, unverified, and unsupported claim.

Additionally, Montero seeks release from arrest or attachment of the proceeds from the sale of one of the Defendant real properties (ECF No. 113) and requests judicial notice related to another Defendant real property (ECF No. 130). Those motions are fully briefed. To the extent Montero has filed those motions in his individual capacity, which it appears he has, they are denied based on Montero's lack of standing, as set forth above. To the extent Montero has submitted those motions on behalf of the entity owners, the Court denies the requests as being improperly presented as an unlawful pro se filing on behalf of a business entity. Either way, the Court **denies** both motions (**ECF Nos. 113, 130**).

**Done and ordered** at Miami, Florida, on January 3, 2022.

_____
Robert N. Scola, Jr.
United States District Judge