United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 21-20614-Civ-Scola |
| Approximately $3,275.20 seized | ) |
| from Bank of America Account | ) |
| Number 22905257244, and others, | ) |
| Defendants. | ) |

## Omnibus Order Regarding Claimant Rosa Vega

     In this case, the Government seeks forfeiture in rem of various assets—fourteen accounts, totaling about $45 million, and seven real properties—that it says constitute the proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, or property traceable to such proceeds or property (collectively, the "Defendant Assets"). (Compl., ECF No. 1.) Various individuals and entities have filed verified claims, alleging interests in the Defendant Assets. Among those putative claimants is Rosa Vega who claims an interest in two real properties in Miami, Florida (the "Claimed Properties"). (Vega's Cl., ECF No. 40.)[1] The Government has moved to strike Vega's claim to the two properties because she lacks standing as a result of her failure to file an answer to the forfeiture complaint. (Gov't's Mot. to Strike, ECF No. 285.) Vega has responded in opposition, arguing (1) she should be afforded an extension of time, in excess of three years, to file her answer and (2) the Government's motion is defective because it does not comply with the conferral requirements of Local Rule 7.1(a)(3). (Cl.'s Resp. to Mot. to Strike, ECF No. 292.) The Government has timely replied. (Gov't's Reply to Mot. to Strike, ECF No. 299.) At the same time, Vega moves for leave to file her answer out of time (Cl.'s Mot. for Leave, ECF No. 291), which is also fully briefed: the Government's reply in support of its motion doubles as its response to Vega's motion (ECF No. 299), to which Vega has replied (Cl.'s Reply, ECF No. 302).[2] After careful review, the Court **grants** the Government's motion to strike (**ECF**

---

[1] Vega also filed her claim at docket entry 39. Although she offers no explanation for the duplicate filing, it appears she refiled it, at docket entry 40, to address formatting issues in the earlier filing.

[2] The Court **grants** Vega's unopposed motion for leave to file her reply (**ECF No. 301**) out of time.

**No. 285**) and **denies** Vega's motion for leave to file her answer out of time (**ECF No. 291**).

## 1. Background

In 2021, the Government filed an in rem civil forfeiture action as provided for under Supplemental Rule G, the Federal Rules of Civil Procedures, and 18 U.S.C. § 985, seeking forfeiture of assets constituting the proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, or property traceable to such property—including the Claimed Properties, real properties located at 488 Northeast 18th Street, #2109, Miami, Florida 33132 and 90 Southwest 3rd Street, #2314, Miami, Florida 33130. (Compl. ¶ 2.) A few months later, Vega filed a claim asserting her ownership interest in the Claimed Properties. (ECF No. 40.) Although over three years have since passed, Vega has never filed an answer to the Government's complaint. Based on Vega's failure to respond to the complaint, the Government now asks the Court to strike her claim. Concomitantly, Vega seeks leave to file her answer to the complaint out of time.

## 2. Legal Standard

This action, as a civil action in rem in which the Government seeks forfeiture of the Defendant Assets, is governed by Supplemental Rule G and, to the extent Rule G does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure. In addition to establishing Article III standing, a claimant in a civil forfeiture action bears the burden of also establishing statutory standing. *U.S. v. $688,670.42 Seized from Regions Bank Account No. XXXXXX5028*, 449 F. App'x 871, 873 (11th Cir. 2011). The Supplemental Rules and 18 U.S.C. § 983(a)(4) set forth statutory standing requirements for contesting a forfeiture. *U.S. v. $12,126.00 in U.S. Currency*, 337 F. App'x 818, 818–819 (11th Cir. 2009). "Under Rule G(5) of the Supplemental Rules, claimants are required to file both a verified claim asserting their interest in the seized property and an answer to the government's forfeiture complaint." *Id.* at 819. The answer to the complaint (or a motion under Rule 12) must be filed within twenty-one days after the claim has been filed. Supp. R. G(5)(b). "Although a district court has discretion to extend the filing period, it may also insist on strict compliance with the Supplemental Rules." *Id.* Under Supplemental Rule G(8)(c), the Government may move to strike a claim or answer for failing to comply with G(5) or because a claimant lacks standing. Supp. R. G(8)(c).

### 3. The Court strikes Vega's claims.

Vega filed her claim on April 8, 2021. (ECF No. 40.) Accordingly, under Rule G(5)(b), she had until April 29, 2021, to file an answer. Well over three years have passed and Vega, to date, has failed to do so. As a result, the Government maintains, Vega lacks standing, warranting the striking of her claim. (*Id.*) In opposition, Vega acknowledges she has not filed an answer but, she argues, the Court should (or must) exercise its discretion to excuse her untimeliness based on several extenuating factors. (Cl.'s Resp. at 1.) At the same time, in an effort to cure her default, Vega seeks leave to file her answer out of time. (Cl.'s Mot. for Leave, ECF No. 291.) The Court is not persuaded that Vega's failure to comply with Rule G should be excused.

As previously set forth, Supplemental Rule G(5)(b) unequivocally requires the filing of an answer within twenty-one days. Further, the applicable statute provides that, in cases where the United States files a civil complaint in district court seeking forfeiture of property, "[a] person asserting an interest in seized property . . . *shall* file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." 18 U.S.C. § 983(a)(4)(B) (emphasis added). Additionally, the Government provided ample notice of this requirement. First in its notices of its verified complaint for forfeiture in rem against the real properties, which were both posted on each real property, as well as filed in this case, the Government directs that, once a claimant files a verified claim, she "**must** then file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure **no later than 21 days after claim is filed**." (Nots. of Compl., ECF Nos. 1-8, 1-9 (emphasis in original); Rets., ECF Nos. 135, 137.) A similar message regarding an answer also accompanies the notice of forfeiture action that the Government published on www.forfeiture.gov. (Decl. of Publication, ECF No. 175-1.)

In the face of this unambiguous requirement, and undisputed ample notice of it, Vega argues her failure to comply should nonetheless be excused. In support of her position, Vega relies on several cases where courts, in their discretion, afforded a claimant relief from strict compliance with Supplemental Rule G(5). For example, she leans heavily on a case from the Eleventh Circuit where the circuit court concluded that the district court had abused its discretion in striking various amended verified claims as untimely. *U.S. v. $125,938.62*, 370 F.3d 1325 (11th Cir. 2004). In reversing the district court, the circuit court identified a list of the various types of factors that district courts should consider in determining whether to exercise their discretion to extend a deadline to file a verified claim: (1) when the claimant became aware of the seizure; (2) whether the government encouraged the delay in filing the

claim; (3) the reasons the claimant proffers to explain or excuse the delay; (4) whether the government was on notice of the claimant's interest in the seized property before the expiration of the claim deadline; (5) whether the government would be prejudiced by the delay; (6) whether a claimant's filing meets the basic requirements of a verified claim; (7) whether the claimant had timely petitioned for an enlargement of time; (8) the amount of money or value of the asset at issue; and (9) the propriety of imputing any negligence of counsel to the claimant. *Id.* at 1329.

In urging the Court to apply this analysis to her case, Vega maintains that the following circumstance permit—"if not mandat[e]"—allowing her to file her answer out of time: (1) the Government has long been on notice of Vega's claims to the real properties; (2) the Government will not suffer any "legitimate prejudice" as a result of the delay; (3) the amount at issue is significant; (4) the prejudice to Vega would be substantial if she is not allowed to perfect her claims; (5) Vega has actively participated in this action "for years," rendering her answer a "mere technicality"; and (6) the Government's conduct induced the delay. (Cl.'s Resp. at 1, 4–5.) The Government counters that, first, the cases Vega relies on apply only to deficient *claims*, rather than *answers*, and that, second, the factors Vega relies on are insufficient, in any event, to excuse her failure to timely file her answer. (Gov't's Reply at 8–12.) Although the Court agrees with the Government that the cases Vega relies on are not directly on point, the Court also finds no principled reason why the same, or at least a similar, analysis would not apply to a deficient answer, instead of a claim, despite the obvious differences between the two. That said, the Court has carefully considered the factors Vega points to and finds they fail to justify excusing her failure to file an answer for over three years.

First, Vega's claim that she "has long participated in these proceedings," is not supported by the record. Aside from submitting a claim, asserting her interest in the Claimed Properties, the only other litigation activity Vega's counsel proffers, by way of a sworn declaration, is that, over the course of three years, Vega "serv[ed] a notice of non-party production on Plaintiff" and "participated in settlement negotiations." (Lage Decl. ¶ 3, ECF No. 292-1, 1.) These limited activities fall far short of establishing, as Vega urges, that she has "actively pursued [her] interest in the defendant property" or that she has "spent considerable resources preparing for trial." (Cl.'s Resp. at 6.) Instead, all indications in the record are to the contrary: whether by design, apathy, or something else, Vega has not vigorously—or even actively—pursued her claims or sought to comply with the Court's deadlines. For example, on the eve of the close of discovery, Vega sought a 60-day extension of the fact- and expert-discovery deadlines, along with the dispositive-motion deadline, because of

counsel's "unforeseen," but unspecified, "personal and professional circumstances." (Cl.'s Mot. for Ext. ¶ 3, ECF No. 275, 1.) In reality though, as Vega doesn't dispute, she had not, as of the filing of that motion, participated in any discovery in this case whatsoever. In short, Vega's limited participation in this case does not qualify as a circumstance that would warrant affording her leeway to file her answer out of time.

     Vega's contention that the Government's conduct induced her default is similarly unconvincing. Vega complains that her ability to answer the complaint was impaired by (1) settlement negotiations with the Government; (2) the Government's failure to disclose, at counsel's request, whether Vega was the subject of a related criminal investigation; and (3) the Government's "veiled threats of bringing charges if Vega continued to contest forfeiture." (Cl.'s Mot. at 5–6; Cl.'s Resp. at 5–6.) Without any further substantiation, explanation, or factual support, Vega fails to show that anything the Government did actually thwarted her efforts to file an answer. Indeed, it was not until two weeks after the Government filed its motion to strike that Vega ever sought an extension of time to answer the complaint. And, notably, she supplied a proposed answer, along with that motion, despite all the purported impediments listed above. In sum, nothing in the record shows that the Government either furnished Vega with misinformation or in any way sandbagged her efforts to file an answer.

     Nor are Vega's unadorned arguments, that "the amount at issue is significant" and that she "will suffer substantial prejudice if she [cannot] perfect her claims," compelling. (Cl.'s Mot. for Leave at 1, 5; Cl.'s Reply at 7 ("not permitting her to proceed would be highly prejudicial"); Cl.'s Resp. at 1, 3, 5.) Without the recitation of a single supporting fact, Vega's presentation leaves the Court unable to evaluate either the value of her interest in the Claimed Properties or the validity of her claim to that interest. Vega's bare assertion that the value of the asset is "significant" and that she will face "significant" prejudice if not excused from the answer deadline, does not in any way move the needle in her favor.

     Next, while it is indeed true that the Government has been on notice of Vega's interest in the Claimed Properties since she filed her claim, over three years ago, that is not the same as being apprised of the information conveyed by a properly filed answer. While "[a] claim forces the party contesting forfeiture to swear that he has an interest in the property, . . . an answer requires the claimant to state defenses and to admit or deny the plaintiff's averments." *U.S. v. $25,790 U.S. Currency*, No. CIV.A. AW-09-3283, 2010 WL 2671754, at *3 (D. Md. July 2, 2010). The distinction is important. Without a claimant's answer, the Government (and the Court) have no way of knowing which allegations in the complaint are admitted—and therefore not in issue at trial—and which are

contested, requiring the Government to prove them by a preponderance of the evidence in order to prevail. *See U.S. v. All Assets Held at Bank Julius, Baer & Co., Ltd.,* 228 F. Supp. 3d 118, 125 (D.D.C. 2017) ("[A] claimant's answer pursuant to Supplemental Rule G(5)(b) is essential because it serves to apprise the United States of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail.") (cleaned up). Accordingly, the Government's mere awareness of Vega's claimed interest in the property does not mitigate her failure to file an answer for three years.

Relatedly, and most importantly, Vega's contention that the Government will not suffer any prejudice falls well wide of the mark. Allowing Vega to file her answer at this late date would undoubtedly impair the Government's ability to litigate its case. The discovery deadlines in this case have passed, leaving the Government, after three years, unable to marshal evidence in response to the allegations Vega contests or the affirmative defenses she raises. Vega's contention that her answer is a "mere technicality" is wholly unavailing. Instead, the Court has no difficulty in concluding that allowing Vega to file her answer at this late date would thoroughly prejudice the Government's case.

In sum, the Court finds no extenuating circumstances in this case, especially in light of the severe prejudice to the Government, that would warrant deviating from the Eleventh Circuit's pronouncement "that claimants must strictly adhere to the procedural requirements of the Supplemental Rules to achieve statutory standing to contest a forfeiture action." *U.S. v. $12,126.00 in U.S. Currency*, 337 F. App'x at 820. Without any real justification, except perhaps her concerns about becoming entangled in related criminal proceedings, Vega sat on her rights for over three years without any good faith effort to participate in this litigation. Nothing about that strategy amounts to extenuating circumstances that would prompt the Court to exercise its discretion to relax the strict-compliance standard.

### 4. The Government failed to comply with Local Rule 7.1(a)(3).

On the other hand, the Court joins Vega in being hard pressed to understand why the Government failed to confer with her, as required by Local Rule 7.1(a)(3), before filing its motion. On at least three separate occasions in this case, the Court has denied a litigant's request for relief based on a failure to confer under Rule 7.1. At least two of those orders were directed at the Government and of those, one involved another Government motion to strike other verified claims in this case. Despite these clear admonishments, the Government, in its current motion to strike, nonetheless proclaims, without

any citation or analysis, that its motion is "exempt" from the conferral requirement.

But Local Rule 7.1(a)(3) clearly specifies the universe of motions that are exempted from the conferral requirement:

> a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, for pro hac vice admission, or to involuntarily dismiss an action, for garnishment or other relief under Federal Rule of Civil Procedure 64, or otherwise properly filed ex parte under the Federal Rules of Civil Procedure and these Local Rules, or a petition to enforce or vacate an arbitration award.

L.R. 7.1(a)(3). A motion to strike for lack of standing in a civil forfeiture action in rem is not listed. Undeterred, and rather than simply err on the side of caution, the Government rationalizes, in its motion, that its motion to strike is "akin to a motion to dismiss for lack of standing in a civil action" and therefore does not require conferral. (Gov't's Mot. at 1 n. 1.) Perhaps realizing the feebleness of that position (since the Rule does not exempt "a motion to dismiss for lack of standing in a civil action" to begin with), the Government changes tack in its reply, contending, again without citation or even any analysis, that its motion to strike is instead analogous to a motion to involuntarily dismiss a civil action.

The Government also insists that its failure to confer is of no moment "because few, if any, parties in a civil in rem forfeiture action would agree to the relief sought in a dispositive motion or to have their claims stricken for lack of statutory standing." (Gov't's Reply at 15.) The Government misperceives the point of the rule. It is not only to encourage parties to reach agreement on matters that are particularly amenable to consensus but also to encourage the parties to maintain open lines of communication and afford counsel, on either side, the opportunity to abandon meritless positions prior to court involvement. *See Sound Around, Inc. v. O'Donnell*, No. 22-23395-CIV, 2023 WL 4234825, at *2 (S.D. Fla. June 28, 2023) (Scola, J.) (recognizing that one of the many goals of the rule is "to force the parties to engage in the meaningful exchange of information and viewpoints" before entangling the court in their quarrel). The Government is also mistaken in its belief that it "may ignore the Local Rules if [it] thinks [its] Motion will be opposed. This is not how the Rules work." *Cameron v. Scottsdale Ins. Co.*, No. 16-21704-CV, 2019 WL 13521062, at *2 (S.D. Fla. Feb. 26, 2019) (Torres, Mag. J.); *see also Norych v. Admiral Ins. Co.*, No. 08-60330-CIV-ALTONAG, 2010 WL 2557502, at *2 (S.D. Fla. June 23, 2010) (Altonaga, J.) ("[T]here is no exception in the Local Rules for futility.").

Digging in further, the Government points to prior instances in the record of this case where the Court gave the Government a pass when it previously failed to comply with the conferral requirement. As the Government sees it, the Court's decision to not police every instance of noncompliance with a rule, results in conferring free rein on parties to thereafter flaunt the rule with impunity. This is incorrect. The Court has limited resources and has neither the time nor the inclination to robotically track down every single infraction of every single rule governing the conduct of the parties who appear before it—indeed, the preferable course in most instances, as occurred here, would be for the parties themselves to raise the transgression and to thereafter frame its import for the Court as well. It should go without saying, but the idea that the Court's failure to prosecute every rule breach somehow grants the parties a hall pass to ignore the rules thereafter is obviously unworkable—and an odd concept for the Government to be promoting. *Cf. Davidson v. City of Avon Park*, 848 F.2d 172, 176 (11th Cir. 1988) (Hodges, C.J, concurring in part and dissenting in part) (noting that "any judicial declaration being relied upon as a waiver or suspension of compliance with duly promulgated rules of Court must be clear and precise to the point of leaving no room for the slightest doubt"). If anything, the Court would hope that the Government, of all parties, would choose to steer well clear of the line when it comes to complying with the Court's rules. Why not spend ten minutes upfront, conferring with opposing counsel, to avoid even the chance of burdening the Court with surplus briefing and analysis of the issue? One of the last things the Court should be expending its limited resources on is refereeing whether the Government had a possibly colorable argument for maneuvering around compliance with the Court's Local Rules.

But here we are. And now the Court is forced to determine, in its discretion, the consequences of the Government's failure to comply with Rule 7.1(a)(3). Of course Vega argues the Court should deny the Government's motion, on the grounds that its noncompliance has unnecessarily multiplied these proceedings. (Cl.'s Resp. at 7.) While the Court agrees that the Government has unnecessarily complicated this litigation by not conferring, denying the motion to strike on these grounds would only exacerbate the situation. Apart from the Government's motion to strike, the Court is unpersuaded by Vega's motion for permission to file her answer out of time, leaving her without standing to proceed in this litigation. Under these circumstances, and in the interest of judicial economy, no net benefit will be gained, at this point, by the Court's exercising its discretion to deny the Government's motion to strike for lack of compliance with Rule 7.1(a)(3). *Cf. Nanotech Ent., Inc. v. R&T Sports Mktg., Inc.*, No. 14-61608-CIV, 2014 WL

12611203, at *3 (S.D. Fla. Sept. 24, 2014) (Cohn, J.) ("The Court will not rely upon the pre-filing conference requirement of Rule 7.1(a)(3) to retain jurisdiction where it should not."). The Court can only hope that at least some benefit will result from the time spent reiterating to the Government that "[t]he Court takes the pre-filing requirements of Rule 7.1(a)(3) seriously." *Id.*; *see also Zaklama v. Mt. Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990) ("Practi[ti]oners must adhere to applicable local rules in order for those local rules to have effect and federal courts by enforcement will preserve the integrity of local rules.")

### 5. Conclusion

For the reasons set forth above, the Court **grants** the Government's motion to strike Vega's claim for a lack of standing (**ECF No. 285**) and **denies** Vega's motion for leave to answer the complaint out of time (**ECF No. 291**). Because the Court finds Vega has no standing to pursue her claim, the Court also **denies** the Government's motion for summary judgment **as moot** (**ECF No. 289**).

The Court orders the Government to advise via status report, on or before **September 9, 2024**, as to the issues remaining for resolution in this case.

**Done and ordered**, in Miami, Florida, on August 28, 2024.

_____
Robert N. Scola, Jr.
United States District Judge